```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JOSEPH MACK THOMAS,
                    Plaintiff,              09-CV-6234

v.                                          **DECISION**
                                            **And ORDER**
MICHAEL ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.
_____
```

Introduction

Plaintiff, Joseph Mack Thomas ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision by the Commissioner of Social Security finding Plaintiff ineligible for disability insurance benefits and supplemental security income benefits under Titles II and XVI respectively of the Social Security Act for the period of June 24, 2006 through February 23, 2008. Plaintiff asserts that this determination was not supported by substantial evidence and was based on error of law. Plaintiff alleges that the Commissioner erred in his determination by (1) violating the treating physician rule, (2) failing to properly evaluate Plaintiff's testimony regarding symptoms and pain, and (3) failing to consult a vocational expert. For the aforementioned reasons, the Plaintiff requests that the Commissioner's decision be reversed.

The Commissioner moves for judgement on the pleadings affirming his final decision that the Plaintiff is not entitled to benefits for the period of June 24, 2006 through February 23, 2008

1

on the grounds that the decision is supported by substantial evidence in the record and based on the correct legal standards. For the reasons set forth hereunder, the Court finds the decision of the Commissioner to be supported by substantial evidence in the record and in accordance with the applicable legal standards.

Background

Plaintiff was born February 24, 1958. He completed his high school education, attended some college, and was employed as a field estimator for a fencing company for several years. In January 2004, Plaintiff was involved in a motor vehicle accident ("MVA") and sustained injuries to his spine and ribs. Plaintiff recovered from these injuries and returned to work, reporting only mild functional pain with strenuous activity. In February 2006, Plaintiff was shot in the left side. This resulted in nerve damage to his left leg and affected his ability to walk. Plaintiff did not return to work after being shot but remained employed with the fencing company through June 24, 2006. He has not engaged in substantial gainful activity since this employment terminated. On July 10, 2006, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("SSA"), Titles II and XVI respectively, alleging disability since June 24, 2006. These applications were initially denied and a timely request for a hearing before an Administrative Law Judge ("ALJ") was filed. The Plaintiff appeared, with counsel, at an administrative hearing before ALJ Michael Friedman on July 7,

2

2008. On August 28, 2008, the ALJ issued a decision finding the Plaintiff disabled as of February 24, 2008, but not prior thereto. This became the final decision of the Commissioner on March 13, 2009 when the Appeals Council denied Plaintiff's request for review. This action, seeking review of the Commissioner's decision, was commenced on May 8, 2009.

## Discussion

I. <u>Jurisdiction and Scope of Review</u>

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. <u>Matthews v. Eldridge</u>, 424 U.S. 319, 320 (1976). Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. <u>See</u> <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the Plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex.1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

II. Evaluation of Entitlement to Social Security Benefits

    i. Standard for Determining Disability

The ALJ, in his decision, found that Petitioner was not disabled within the meaning of the Act for the period from June 24, 2006 through February 23, 2008. The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

4

An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In determining if a disability exists, the ALJ is required to adhere to the following five-step sequential evaluation:

> (1) if the claimant is performing substantial gainful work, he is not disabled;
>
> (2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;
>
> (3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;
>
> (4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is not disabled;
>
> (5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v)(2009). Following this sequential analysis, the ALJ determined that Plaintiff was not disabled during the period in question.

    ii.   Application of Five-Step Disability Evaluation

Under step one, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since June 24, 2006, the alleged onset date.

Under step two, the ALJ must determine if the Plaintiff has a medical impairment, or combination of impairments that is severe. Under the regulations, an impairment is severe if it significantly limits an individual's capacity to perform basic work activities. §§ 404.1521(a), 416.921(a); Social Security Ruling ("SSR") 85-28. Plaintiff was found to have a severe combination of physical impairments, including a compression fracture of the thoracic spine, degenerative disc disease of the lumbar spine, and left leg neuropathy resulting from a gun shot wound. See Social Security Transcript ("T.") at 324, 357-63. These impairments were considered severe as they limited Plaintiff's ability to perform work related functions such as sitting, standing, walking, lifting, and carrying.

The ALJ found Plaintiff's medically determinable mental impairments to be borderline personality disorder and cocaine dependence, in remission. See T. at 17-19. These mental impairments were considered in combination and determined to not significantly limit Plaintiff's capacity to perform basic work activities. Id. Examples of basic mental work activities include use of judgment, ability to respond appropriately to others, and the ability to understand, remember, and follow simple instructions. See §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).

6

Plaintiff's impairments were not severe as they only had a minimal effect on Plaintiff's ability to perform basic work activities.

In assessing Plaintiff's mental impairments, the ALJ noted that most of Plaintiff's hospitalizations were a result of his cocaine abuse and most occurred prior to the alleged disability onset date. See T. at 17. After the alleged onset date, Plaintiff completed one inpatient drug treatment program. See T. at 243. He did not continue with mental health counseling after completion of the program. Plaintiff was evaluated by several doctors and psychologists during the relevant period and was generally found to be oriented and coherent with his attention and concentration intact. See T. at 177-80, 182-86, 238-43. Plaintiff was found to have no limitations in activities of daily living and only mild limitations in social functioning and concentration, persistence, or pace due to his impaired memory skills. T. at 182-86. As Plaintiff was found to have only mild limitations in his mental functioning, his mental impairments were determined to be non-severe.

Under step three, the ALJ correctly determined that the combination of Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d) and 416.920(d). In making this determination, The ALJ specifically referred to the musculoskeletal impairments at listings 1.02 and 1.04, and the neurological impairments at 11.14 of the Regulations. Id.

Steps four and five of the analysis require the ALJ to first determine the Plaintiff's residual functional capacity ("RFC"). In assessing Plaintiff's RFC, the ALJ must consider all relevant and available clinical signs, laboratory findings, and the effect of Plaintiff's symptoms on his functioning. See §§ 404.1520(a)(c)(1), 416.920(a)(c)(1). The ALJ determined that, prior to February 24, 2006, the Plaintiff had the RFC for sedentary work as defined by §§ 404.1567(a) and 416.927(a).[1] Plaintiff claims that the ALJ erred in this determination in that his finding is not supported by substantial evidence and is based on error of law. These claims are addressed in Part iii of this decision.

Under Step four, the ALJ determined that the Plaintiff was unable to perform his past relevant work as a field estimator for a fencing company. See T. at 413. This work involved prolonged periods of standing or walking and the frequent lifting of objects weighing up to fifty pounds. As Plaintiff was found to have the RFC for sedentary work only, he would no longer be able to perform his past relevant work.

Under step five, the ALJ must determine whether Plaintiff could successfully adjust to other work available in the economy. This determination was made by considering Plaintiff's RFC, age, education, and work experience along with the Medical-Vocational guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Based on a

---

[1] These require that the Plaintiff lift "no more than 10 pounds at a time", sit for six hours in an eight-hour day, and stand or walk for up to two hours in an eight hour day. 20 C.F.R. § 404.1567(a); § 416.927(a).

8

direct application of Medical-Vocational Rule 201.21, the ALJ determined that the Plaintiff was not disabled prior to February 24, 2008. Plaintiff asserts that the ALJ erred in determining that Plaintiff was capable of making a successful adjustment to other work without consulting a vocational expert, which is addressed in Part iv.

    iii. <u>Determining Residual Functional Capacity</u>

Plaintiff alleges that the ALJ made an erroneous determination of his RFC because he (1) failed to properly apply the treating physician rule and (2) failed to properly evaluate Plaintiff's testimony regarding his symptoms and pain. Plaintiff asserts that the evidence in the record, when properly evaluated, does not support the ALJ's finding that the Plaintiff maintained the RFC for sedentary work.

1. <u>Evaluating Treating Physician's Medical Opinion</u>

   The opinion of a treating physician is generally given controlling weight if supported by medically acceptable clinical and diagnostic techniques and consistent with other substantial evidence in the record. §§ 404.1527(d)(2), 416.927(d); <u>Schisler v. Heckler</u>, 787 F.2d 76, 81 (2d Cir. 1986). This is because a treating physician generally has observed the patient over a long period of time and can give a detailed medical history. <u>Salisbury v. Astrue</u>, 06-CV-6629L, 2008 U.S. Dist. LEXIS 97618 * 10 (W.D.N.Y. Dec. 2, 2008). When deciding whether to give a treating physician controlling weight, the ALJ must consider (1) whether a treatment

9

relationship exists; (2) the length and nature of the treatment relationship; (3) the support for the opinion from medical and laboratory findings; (4) the consistency with the record as a whole; (5) specialization of the treating physician; and (6) other evidence that supports or contradicts the opinion. Id. The ALJ must also provide an explanation supporting his determination. § 404.1527(d)(2); § 416.927(d)(2).

Here, the ALJ considered the medical opinion of Plaintiff's primary treating physician, Dr. Thomas Arnone, and gave his opinion little weight. Dr. Arnone, who had a lengthy treatment relationship with the Plaintiff, last evaluated the Plaintiff on September 28, 2006. See T. at 151. Dr. Arnone noted that Plaintiff was being treated by Dr. Raj Patel for back injuries sustained in a motor vehicle accident ("MVA"). Id. At 152. The plaintiff reported his pain at a 7/10, however, his physical exam showed no apparent distress. Dr. Arnone noted decreased mobility in the Plaintiff's thoracic and lumbar spine along with left lower extremity paresthesias. Dr. Arnone opined that Plaintiff was likely unemployable as a result of these limitations but beyond this conclusory statement he did not note any particular work related activities that Plaintiff was unable to perform. The record reveals that these conclusions are not supported by objective medical evidence and are in conflict with the opinions of other examining physicians.

10

As noted by Dr. Arnone, Plaintiff's back injuries were primarily treated by Dr. Raj Patel. MRI and X-ray imaging taken after Plaintiff's MVA on February 12, 2004 revealed two rib fractures on the right side, the presence of degenerative disease and a mild posterior spondylotic ridge at L5-S1. T. at 354-63. Plaintiff was given a lumbosacral orthosis to aid healing. T. at 328. Subsequent X-rays taken on May 10, 2004 revealed compression fractures of T7 and T8. Dr. Patel noted on August 16, 2004 and April 20, 2005 that Plaintiff's back pain was nearly resolved and that Plaintiff only experienced mild back pain with strenuous activity. T. at 324, 327.

In February 2006, Plaintiff was shot in his left side and was treated at Strong Memorial Hospital. T. at 350. Plaintiff was treated post-release by his primary care physician for intermittent paresthesia in his left leg. A neurological evaluation was requested in April 2006 confirming the presence of nerve damage and recommending a follow up in 6-8 months if symptoms persisted. T. at 372-73. The record contains no record of a follow up evaluation. Plaintiff saw Dr. Arnone in September 2006, complaining of chronic back pain and left leg neuropathy. T. at 152. Plaintiff did not seek treatment with Dr. Patel for his back pain after being shot. At the request of the Commissioner, Plaintiff was evaluated by James Naughten, D.O., on October 2, 2006 for an internal medicine examination. T. at 176-81. Plaintiff

reported that he was able to perform activities of daily living such as cooking, cleaning, laundry, shopping, child care, and maintaining personal hygiene. Dr. Naughten noted Plaintiff had a stiff gait with a moderate limp in the left leg. No abnormalities were noted in the cervical and thoracic spine, however, examination of Plaintiff's lumbar spine revealed restricted range of motion accompanied by bilateral lumbar pain, spasm, and tenderness. Dr. Naughten opined that Plaintiff had no limitation for seeing, hearing, talking, sitting, standing, pushing, pulling, or reaching. Moderate limitations for walking, climbing stairs, lifting, carrying, and handling objects were noted. Id. These limitations would not prevent the performance of sedentary work. See §§ 404.1567(a), 416.927(a). This evaluation, conducted shortly after Plaintiff's last examination by Dr. Arnone, conflicts with Dr. Arnone's conclusion that Plaintiff was unemployable.

The ALJ's decision to afford little weight to the medical opinion of Plaintiff's treating physician was supported by substantial evidence in the record. The reports of improvement in Plaintiff's back condition by Dr. Patel along with the opinion of examining physician Dr. Naughten belie Dr. Arnone's conclusory assertion that Plaintiff was unemployable. The ALJ also relied on the lack of medical treatment during the relevant period as inconsistent with Plaintiff's allegations of functional debility. The Second Circuit has previously held that negative inferences may

12

be drawn from the lack of treatment. See Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989); Crean v. Sullivan, 91 Civ. 7038, 1992 U.S. Dist. LEXIS 10734, *15 (S.D.N.Y. July 22, 1992).

2. Evaluating Plaintiff's Testimony

In making his RFC finding, the ALJ considered Plaintiff's symptoms and the extent to which those symptoms were consistent with the objective medical evidence. See 20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p, 96-7p. In assessing Plaintiff's symptoms, the ALJ must first determine if an underlying impairment exists that could reasonably be expected to produce the symptoms complained of. SSR 96-7p. As noted above, Plaintiff sustained various spinal injuries as a result of a MVA. These injuries found to be ninety-nine percent resolved after conservative treatment. T. at 324. After Plaintiff was shot, Dr. Arnone noted a decreased range of motion in Plaintiff's spine and paresthesias in the left lower extremity. T. at 151-53. No new neurological abnormalities were noted. Id. The ALJ determined that these physical impairments could reasonably be expected to produce the pain and other symptoms as Plaintiff alleged.

After determining that an underlying impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the Plaintiff's ability to do work activities. When making this

13

determination, the ALJ must assess the credibility of the Plaintiff's statements by evaluating the following factors:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P.

Plaintiff claimed that he was unable to clean, read, prepare meals or shop without pain and stress. T. at 417-18. However, this testimony conflicts with Plaintiff's statements, to Drs. Zax and Naughten, stating that he was able to perform these daily functions. T. at 178,185. The Plaintiff further alleged that his leg and back pain prevented him from being able to sit, stand, or walk for more than ten to fifteen minutes at a time. T. at 416. This degree of debility is not supported by the medical opinions of his examining physicians.

Plaintiff's treatment history and methods of treatment also do not indicate that he was suffering a disabling condition which would prevent him from engaging in sedentary work. Plaintiff used no assistive devices, did not attend physical therapy, never

underwent surgery, and used only over-the-counter medications. Since the alleged onset date, Plaintiff had not returned to see Dr. Patel, who primarily treated his spinal injuries. With regard to his leg neuropathy, Plaintiff had only seen his primary physician. This course of treatment is not consistent with the intensity and persistence of symptoms claimed by the Plaintiff.

The ALJ did not discount the credibility of Plaintiff's testimony in its entirety. Plaintiff's allegations with respect to limitations in standing and walking were found to be credible. However, The ALJ found Plaintiff's allegations of severe limitations in the ability to sit were not credible. It is not the function of the reviewing court to resolve evidentiary conflicts or evaluate the credibility of witnesses. Aponte v. Secretary, Dep't of Health & Human Services, 728 F.2d 588, 591 (2d Cir. N.Y. 1984). If findings of fact are supported by substantial evidence, they must be accepted by the Court. Id. The ALJ's determination that Plaintiff's allegations were not fully persuasive is supported by Plaintiff's inconsistent statements, the lack of ongoing or continued treatment, and objective medical evidence. Accordingly, the ALJ's determination of credibility must be upheld.

The ALJ provided adequate explanations for giving little weight to the medical opinion of the treating physician and to discounting Plaintiff's testimony. As these determinations were supported by substantial evidence in the record and made in

accordance with the relevant legal standards, the ALJ's assessment of Plaintiff's RFC was not erroneous.

    iv. <u>Determining Plaintiff's Ability to Perform Other Work</u>

Once Plaintiff establishes that he is unable to perform past relevant work, the burden shifts to the Commissioner to prove that alternative substantial gainful work exists that the Plaintiff could perform. <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). In order to expedite and simplify this process, the Commissioner established grids, contained in 20 C.F.R. § 404 subpart P, Appendix 2 ("App. 2"), which provide predeterminations of disability or non-disability for individuals with severe exertional impairments. <u>See</u> <u>Davis v. Shalala</u>, 883 F. Supp. 828, 832 (E.D.N.Y. 1995). These grids allow the Commissioner to evaluate the Plaintiff based on set categories according to their RFC, age, education, and work experience. <u>Id.</u> Where claimant's range of work is significantly limited by nonexertional impairments, these grids may not be used. <u>Bapp v. Bowen</u>, 802 F.2d 601, 603 (2d Cir. 1986)(holding that mere existence of nonexertional impairment does not necessitate vocational expert). The Commissioner must then introduce testimony from a vocational expert regarding jobs existing in the economy that the claimant could perform. <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996).

Here, the Plaintiff was determined to have an RFC to perform sedentary work due to his exertional limitations. Plaintiff's nonexertional limitations were all found to be mild. T. at 16, 20-

22. As Plaintiff's range of work was not significantly limited by nonexertional impairments, the ALJ was not required to consult a vocational expert. See Bapp, 802 F.2d at 603.

The AlJ correctly determined that Plaintiff fell directly within the criteria of Medical-Vocational Rule 201.21. See App. 2, § 201.21. On June 24, 2006 Plaintiff was 48 years old, which made him a "younger individual" as defined by the regulations.[2] Plaintiff had at least high school education and could communicate in English. See T. at 23; §§ 404.1564, 416.964. Based on the criteria set forth in § 201.21, an individual with these characteristics is not disabled. Once Plaintiff reached the age of fifty, on February 24, 2008, Medical-Vocational rule 201.21 no longer applied. At that point, Plaintiff fell under § 201.14 on the grids, directing a finding of disabled. The ALJ properly ruled that Plaintiff was disabled as of the date of this category change and awarded benefits. However, the ALJ's determination that Plaintiff was not disabled for the period of June 24, 2006 through February 23, 2008 was in accord with the relevant regulations.

The ALJ clearly articulated, as required, his reasons for discounting the medical opinion of Plaintiff's treating physician and for finding the Plaintiff's testimony not credible in making his determination of Plaintiff's RFC. Using this RFC, the ALJ then

---

[2]"If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2." 20 C.F.R. § 404.1563(c); see § 416.1563(c).

properly applied the relevant Medical-Vocational rules in determining that Plaintiff was not disabled prior to February 24, 2008. This determination was made in accordance with the applicable regulations and was supported by substantial evidence in the record. Accordingly, this determination is hereby affirmed.

## Conclusion

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is hereby granted. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         August 5, 2010